United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASETEK HOLDINGS, INC., *et al.*, | No. C-12-4498 EMC |
| Plaintiffs, | |
| v. | **ORDER DENYING IN PART AND DEFERRING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| COOLIT SYSTEMS, INC., | |
| Defendant. | **(Docket No. 93)** |

Plaintiffs Asetek Holdings, Inc. and Asetek A/S (collectively "Asetek") have filed suit against Defendant CoolIT Systems, Inc., asserting that it has infringed and continues to infringe two of Asetek's patents, more specifically, the '362 and '764 patents. Currently pending before the Court is CoolIT's motion for partial summary judgment.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** in part and **DEFERS** in part CoolIT's motion.

## I. DISCUSSION

A.  Legal Standard

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine only if a reasonable trier of fact could find in favor of the nonmoving party. A mere scintilla of evidence supporting a nonmovant's position is insufficient to withstand summary judgment." *McDonald v. Sun Oil Co.*, 548 F.3d 774, 779 (9th Cir. 2008) (internal quotation marks omitted). At the summary

judgment stage, however, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Here, CoolIT has presented three arguments as to why it is entitled to summary judgment – namely, (1) that the double recovery rule bars Asetek from seeking compensatory damages; (2) that the patent exhaustion doctrine immunizes CoolIT from liability; and (3) that CoolIT effectively had an implied license to practice the patents based on a license and covenant not to sue given by Asetek to a third party, *i.e.*, Corsair. CoolIT has the burden of proof as to each of these arguments. *See Boston Scientific Corp. v. Johnson & Johnson*, 534 F. Supp. 2d 1062, 1076 (N.D. Cal. 2007) (finding the double recovery rule, or "'full compensation' doctrine[,] is an affirmative defense, which [the party asserting the defense] has the burden of proving"); *Jazz Photo Corp. v. United States*, 439 F.3d 1344, 1350 (Fed. Cir. 2006) (finding that since patent exhaustion is an affirmative defense, the burden of proof is on defendant); *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 828 (Fed. Cir. 1991) (placing burden of proof on party who raises defense to infringement based upon "have made" license rights). "Where the moving party [as here] will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

B.  Double Recovery Rule

"Generally, the double recovery of damages is impermissible." *Aero Prods. Int'l, Inc. v. Intex Rec. Corp.*, 466 F.3d 1000, 1017 (Fed. Cir. 2006). Here, CoolIT argues that Asetek is improperly trying to get a double recovery because its claim that CoolIT has infringed is largely based on CoolIT's sales to Corsair and Corsair has already paid a royalty to Asetek for all Corsair products that use the patented technology, including those that incorporate CoolIT's products.

To the extent CoolIT argues that it is entitled to partial summary judgment based on the double recovery rule, the motion is denied. The double recovery rule is applicable only where the patent holder has been *fully* compensated for infringement by another party. *See Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1303 (Fed. Cir. 2007) (stating that "a patentee may not sue

1  users of an infringing product for damages if he has collected actual damages from a manufacturer
2  or seller, and those damages fully compensate the patentee for infringement by users"). Here, there
3  is a genuine dispute of material fact as to whether Asetek has been fully compensated for CoolIT's
4  infringement by Corsair. In particular, the Eriksen declaration and e-mail provided by Asetek is
5  sufficient to give rise to a genuine dispute of material fact regarding full compensation. *See*
6  *generally* Eriksen Decl. & Ex. 2 (e-mail).

C. <u>Patent Exhaustion</u>

CoolIT argues next that the patent exhaustion doctrine protects it from liability. More specifically, CoolIT contends that, because Asetek allowed Corsair to purchase and resell CoolIT's products without being sued for infringement, then CoolIT itself should be immunized from a suit for infringement as well.

In its papers, CoolIT acknowledges that the patent exhaustion doctrine has, to date, been applied to "downstream" use only – *e.g.*, where a patent holder authorizes a person or entity to sell its patented technology, then it cannot thereafter pursue the person/entity's customers for infringement for subsequent use of the patented technology. *See, e.g.*, *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 637 (2008) (stating that, "[b]ecause [the licensee] was authorized to sell its products to [a purchaser], the doctrine of patent exhaustion prevents [the patentee] from further asserting its patent rights with respect to the patents substantially embodied by those products"); *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1273–74 (Fed. Cir. 2009) (finding patent exhausted by covenant not to sue manufacturer; barring suit against company who purchased technology covered by the covenant from manufacturer); *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1105 (Fed. Cir. 2001) (stating that, "when a patented device has been lawfully sold in the United States, subsequent purchasers inherit the same immunity under the doctrine of patent exhaustion"). No court that this Court is aware of has ever applied the patent exhaustion doctrine to protect anyone "upstream" – *e.g.*, the person/entity's suppliers – nor has CoolIT identified any such authorities.

While CoolIT invites this Court to be the first to extend the patent exhaustion doctrine upstream, the Court declines that invitation. In *Quanta*, the Supreme Court analyzed the policy and

1 history behind the doctrine, and this analysis strongly suggests that the doctrine is intended to
2 protect downstream use only. *See, e.g.*, *Quanta*, 553 U.S. at 626 (noting that it was the practice of
3 restraining competition downstream from an authorized sale that motivated the rule of patent
4 exhaustion). Furthermore, the Supreme Court specifically stated in *Quanta* that an authorized sale
5 "exhausts the patent holder's rights and prevents the patent holder from invoking patent law to
6 control *postsale* use of the article." *Id.* at 638 (emphasis added). It said nothing about pre-sale use.
7 Federal Circuit authority is consistent with *Quanta*. *See, e.g.*, *Transcore*, 563 F.3d at 1275.

Accordingly, to the extent CoolIT seeks partial summary judgment based on the patent exhaustion doctrine, the motion is also denied.

D.     "Have Made" Rights

Finally, CoolIT moves for partial summary judgment on the ground that it effectively had an implied license to practice the patents at issue based on a license and covenant not to sue given by Asetek to Corsair. Between August 24, 2012, and January 1, 2013, Asetek had a licensing agreement with Corsair, which allowed Corsair to practice the patents at issue in exchange for royalty payments and other consideration. The rights given to Corsair included the right "to make [and] and have made" products covered by the license. Lyons Decl., Ex. A (licensing agreement). Starting on January 1, 2013, the licensing agreement was replaced with a covenant not to sue. Under the covenant, Asetek agreed not to sue Corsair for "the use, sale, offer for sale, or importation" of certain products sold by Corsair and supplied by CoolIT. Lyons Decl., Ex. B (covenant not to sue). Asetek, however, expressly disclaimed that any license or right was being granted to Corsair or to any Corsair supplier, including CoolIT.

CoolIT argues that, through the license and covenant, Asetek gave Corsair not only the right to make for itself products that practice the patented technology but also the right to have another person or entity make products that practice the patented technology for Corsair's use. According to

CoolIT, because it was providing the allegedly infringing products to Corsair pursuant to Corsair's "have made" rights, it is immunized from liability.[1]

Asetek does not dispute the legal principle that "have made" rights can immunize a person or entity from liability – *i.e.*, a licensee possessing "have made" rights can confer an implied license to another by designating that person or entity to produce the item for which the licensee has a license. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 73 (Fed. Cir. 2012); *Cyrix Corp. v. Intel Corp.*, 77 F.3d 1381, 1387-88 (Fed. Cir. 1996); *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 231-33 (D. Del. 2001). Asetek argues, however, that the "have made" rights legal principle is not applicable to the instant case.

The Court agrees with Asetek in part. For the covenant not to sue, Asetek did agree not to sue Corsair for, *e.g.*, the use of its patented technology – and even where Corsair's use of the patented technology arose from Corsair's use of CoolIT's products. However, a covenant not to sue does not mean that any rights, including but not limited to a license, are being conveyed. Indeed, in the covenant, Asetek explicitly stated that it was not conferring any license or right to Corsair or to any Corsair supplier, which included CoolIT. *See CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1074-75 (Fed. Cir. 2009) (stating that, even where there is an inherent or implicit "have made" right, "[a] clear intent shown in a contract to exclude 'have made' rights can negate what would otherwise be inherent").

The licensing agreement, however, is different. The licensing agreement specifically stated that Corsair was being granted "have made" rights.[2] And CoolIT provided, in conjunction with its

---

[1] The Court acknowledges Asetek's argument that the issue of "have made" rights was not raised in CoolIT's opening brief and therefore should not be considered by the Court. While the Court is not unsympathetic to this argument, the Court still considers the issue, particularly because Asetek will not be prejudiced as a result. Asetek had an opportunity to address the issue in its opposition brief.

[2] To the extent Asetek suggests that the plain language of the licensing agreement should not be given effect based on extrinsic evidence (*i.e.*, a letter from Asetek to Corsair, dated June 2012, stating that it was not Asetek's intent to grant Corsair "have made" rights), *see* Eriksen Decl., Ex. 1 (letter), the Court rejects that argument. The licensing agreement clearly grants Corsair the right to "have made" licensed products, and it includes an integration clause. The agreement also provides that it shall be governed by California law. Under California law, "[t]he parol evidence doctrine prohibits the introduction of extrinsic evidence to vary or contradict the terms of an integrated written instrument." *Wagner v. Glendale Adventist Med. Ctr.*, 216 Cal. App. 3d 1379, 1385 (1989).

reply brief, a declaration from its CEO in which he states, *inter alia*, that CoolIT sold products to Corsair to meet "Corsair's unique requirements and custom specifications." Lyons Reply Decl. ¶ 8.

In response, Asetek makes three arguments: (1) for CoolIT to be immunized pursuant to Corsair's "have made" rights in the license agreement, there must have been a contractual conveyance of rights from Corsair to CoolIT; (2) a valid exercise of "have made" rights requires that the manufacturing be done specifically at the request of the licensee and to its specifications, rather than a simple off-the-shelf purchase; and (3) if there is no clear conveyance requirement, then Asetek should be given the opportunity to take discovery (consistent with Federal Rule of Civil Procedure 56(d)) in order to, *e.g.*, test the claims made in the Lyons reply declaration regarding the extent to which CoolIT was making products pursuant to Corsair's specifications.

As to the first argument, the Court is not persuaded. While Asetek cites *Intel*, a Delaware district court opinion, for its argument that "have made" rights must be contractually conveyed, the controlling authority is the Federal Circuit; the Circuit has not required any such formal conveyance. In *LaserDynamics*, the Federal Circuit found that manufacturing by a third party was impliedly licensed pursuant to "have made" rights possessed by licensees, not because of the terms of any agreement between licensee and manufacturer, but simply because the manufacturer was making products at the request of the licensee. In that case, LaserDynamics, Inc. sued Quanta Computer, Inc. ("QCI") for assembling laptops that included an allegedly infringing optical disc drive. The drives at issue were originally manufactured by Quanta Storage, Inc. ("QSI") and sold to brand-name drive makers Philips and Sony/NEC/Optiarc, both of which had licenses with LaserDynamics to make, have made, and sell the disk drives. *See LaserDynamics*, 694 F.3d at 58-59. Phillips and Sony/NEC/Optiarc, in turn, sold the disk drives to QCI, which used the drives in assembling laptop computers for brand-name computer companies. *See id.* The lower court held that this arrangement was not a valid exercise of its licensees' "have made" rights because QSI was not making the drives *for* the licensees, but was simply using the licensees as a pass-through to sell infringing drives directly to nonlicensee QCI – effectively exercising an invalid sublicense. *See id.* at 71-72. The Federal Circuit reversed, finding that the arrangement wherein QSI sold the disk drives to the licensees amounted to a valid exercise of the licensees' "have made" rights because the production

of the allegedly infringing products "was limited to the needs and requests of [the licensees]." *Id.* at 72. The court noted, "The [disk drives] provided to QCI via Philips and Sony/NEC/Optiarc were undoubtedly assembled by QSI for Philips and Sony/NEC/Optiarc, not for QSI or QCI." *Id.* Because the production was undertaken pursuant to "have made" rights, it was impliedly licensed. *Id.* at 73. The court made no reference to and did not require any formal agreement or conveyance of "have made" rights by the licensees to QSI. The fact that the licensees made the request of the manufacturer "to fulfill bona fide orders from licensees" was sufficient to confer the implied license to the manufacturer. *Id.*

*Intel* is not inconsistent with *LaserDynamics* as to this issue. In *Intel*, the defendant Broadcom Corp. brought a motion for summary judgment arguing that it made and sold allegedly infringing semiconductor products to various businesses pursuant to their "have made" rights under their respective licenses with Intel Corp. *See Intel*, 173 F. Supp. 2d at 227-28. The court denied Broadcom's "have made" defense. Asetek cites language from the decision as supporting its position. *See, e.g.*, *id.* at 233 ("An unlicensed party in the position of Broadcom only is afforded the protections of a license if those protections are conveyed by the licensee to the third party as an exercise of the licensed party's 'have made rights.' Broadcom cannot lay claim to those protections if they were never conveyed to Broadcom."). But this language is taken out of context. The legal theory analyzed by the court was one based on *implied* license. The court explained: "The 'have made' cases stand for the . . . proposition that by exercising their rights to 'have [licensed products] made,' licensees can shield the unlicensed manufacturer *who makes the products for them* and subsequently *sells the products to the them* [sic] from infringement liability by *impliedly licensing* the otherwise infringing actions." *Id.* at 232 (emphasis added). Consistent with the implied license analysis, the court did not describe the transaction between licensee and manufacturer as a formal conveyance of licensing rights, but rather described it as "designat[ing]," "commissioning a third party," and "ask[ing] Broadcom to make a licensed product for them." *Id.* at 233-34. The issue was not whether there was a formal conveyance of licensing rights, but whether Broadcom, the third-party manufacturer, acted pursuant to licensees' "have made" rights. *See id.* at 234.

7

Essentially, Asetek's argument would conflate the legal theory of an *implied* patent license – which is what the exercise of "have made" right amounts to – with one based on an *express* licensing right (via formal transfer by contract). This conflation is supported by neither the Federal Circuit authority nor the *Intel* case.

Asetek also argues that, in order to take advantage of an implied license through "have made" rights, CoolIT must have been fulfilling manufacturing requests and specifications supplied by the licensee Corsair, rather than simply selling its products off the shelf. The Court is skeptical of Asetek's argument here as well.

In *LaserDynamics*, the court held that it was sufficient for the "have made" defense that the third-party manufacturer QSI produced the disk drives *for* the licensees and not for itself or some other entity. *See LaserDynamics*, 694 F.3d at 72. "QSI made the [disk drives] at issue here to fulfill bona fide orders from licensees Philips and Sony/NEC/Optiarc." *Id.* at 73. Likewise, in *CoreBrace*, the Federal Circuit held that a licensee exercised its "have made" rights when it "contract[ed] with third parties to have the licensed products made for its own use." *CoreBrace*, 566 F.3d 1069, 1075 (Fed. Cir. 2009). Both of these cases cite to the Federal Circuit's earlier precedent in *Cyrix*, in which the court ruled that an arrangement in which a licensee subcontracted with a third-party manufacturer to fulfill its own manufacturing requirements qualified for "have made" protections under the license simply because "[t]he products manufactured by [the third party] were made for [the licensee]." *Cyrix*, 77 F.3d at 1388. In none of these cases does the Federal Circuit require that the licensee provide specifications to the third party in addition to its request. While the product must be produced or made "for" the licensee, the Federal Circuit has not expressly stated the product must be *custom* made for the licensee.

To be sure, the district court in *Intel* did articulate a limitation on products protected under the "have made" defense. It stated, "The legal effect of licensees exercising their 'have made' rights by commissioning a third party to make licensed products is very different from the legal effect of licensees purchasing allegedly infringing products from a third party." *Intel*, 173 F. Supp. 2d at 233. The *Intel* court pronounced that, in order for a licensee's rights to flow from licensee to manufacturer under a "have made" arrangement, the production must be "pursuant to a request from

8

the licensee." *Intel*, 173 F. Supp. 2d at 233 (citing *Cyrix*, 77 F.3d at 1388). *Intel* took the language a step further as requiring that the product sold to the licensee not be an off-the-shelf product. "Subsequent sales of such off-the-shelf products to licensees do not convert that act of infringement into noninfringement." *Intel*, 173 F. Supp. 2d 201, 233 (D. Del. 2001). In such situations, the licensees are "not taking protections that they have under the license and conveying them to [the manufacturer]." *Id.* Arguably, this limitation is consistent with the logical interpretation of a right to *have* something *made*, as opposed to the right to "buy" or "purchase."

On the other hand, it is difficult to discern a policy basis to distinguish under the implied license theory a customized product from a standardized product purchased by the licensee. In either case, the licensee chooses to outsource the production in order to practice the patent rather than manufacture the product itself. And even if the product is off-the-shelf, the immunity extends only to sales of the product to the licensee, not to sales by the manufacturer or by any other unlicensed party. It is therefore difficult to discern how the licensor's expectations and rights are impaired as a result of the licensee buying off-the-shelf versus customized products; the licensor's rights as to sales of infringing off-the-shelf products to unlicensed users is still protected. Furthermore, the line between customized and non-customized products can be unclear: for instance, how should the court treat an off-the-shelf product that is slightly modified for the license?

In any event, the Court is not required at this juncture to decide whether to adopt *Intel*'s limitation on the "have made" defense.

CoolIT has provided a declaration from its CEO stating that the products it sold to Corsair were pursuant to a specific request and were not off-the-shelf. However, Asetek has not had an opportunity to test the claims made in the Lyons reply declaration regarding the nature of the CoolIT-Corsair arrangement, as it was not provided until CoolIT filed its reply brief. Therefore, the Court agrees with Asetek that, under Rule 56(d), it is appropriate to defer the motion for partial summary judgment to allow Asetek to take discovery on this factual assertion.[3]

---

[3] It is important to note, before additional discovery or briefing takes place, that in the Court's view, it is of no consequence whether CoolIT's agreement with Corsair to supply the products at issue predates Asetek's conferral of "have made" rights to Corsair through the licensing agreement. The Lyons reply declaration indicates that this might have been the case. But even if a

9

Accordingly, the Court hereby defers CoolIT's motion for partial summary judgment on its "have made" rights defense under the licensing agreement. Asetek shall have until November 1, 2013, to take narrowly focused discovery on the "have made" rights issue. By November 6, 2013, Asetek shall file a supplemental brief as to why CoolIT is not entitled to partial summary judgment based on the "have made" rights conveyed in the licensing agreement. The supplemental brief shall be no longer than ten (10) pages. CoolIT shall then have until November 13, 2013, to file a responsive supplemental brief, which shall be no longer than seven (7) pages.

## II. CONCLUSION

For the foregoing reasons, the Court **DENIES** in part and **DEFERS** in part CoolIT's motion for partial summary judgment.

This order disposes of Docket No. 93.

IT IS SO ORDERED.

Dated: October 11, 2013

_____
EDWARD M. CHEN
United States District Judge

---

request was *originally* made before an entity obtained "have made" rights, once that entity possesses "have made" rights, the production may still be undertaken "pursuant to a request from the licensee." *Intel*, 173 F. Supp. 2d at 233. A licensee is not required to formally renew its request by, *e.g.*, redrafting an operative contract or somehow noticing the manufacturer that, as of a certain date, its requests are pursuant to "have made" rights. To require otherwise would be overly formalistic and would not accomplish the purpose of possessing "have made" rights. That does not mean, however, that a third party's production and sales that occurred *prior* to the conferral of "have made" rights are somehow immunized, even if there is a preexisting agreement between the now-licensee and manufacturer that continued into the period of the license agreement.