United States District Court<br>For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASETEK HOLDINGS, INC., *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>COOLIT SYSTEMS, INC.,<br><br>    Defendant.<br>_____/ | No. C-12-4498 EMC<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(Docket No. 93)** |

Plaintiffs Asetek Holdings, Inc. and Asetek A/S (collectively, "Asetek") have filed suit against Defendant Coolit Systems, Inc., asserting that CoolIT has infringed and continues to infringe two of Asetek's patents (the '362 patent and the '764 patent). In August 2013, CoolIT moved for partial summary judgment. The Court denied the motion in part and deferred the motion in part. *See* Docket No. 135 (order). The Court deferred the motion so as to give Asetek an opportunity to take discovery on one of CoolIT's arguments related to "have made" rights held by a third party, Corsair. Discovery has now been completed and the parties have filed supplemental briefs. Having considered both the parties' original briefs and their supplemental filings (on the deferred portion of the partial summary judgment motion), as well as the oral argument of counsel, the Court hereby **GRANTS** in part the motion for partial summary judgment.

## I.   FACTUAL & PROCEDURAL BACKGROUND

On or about August 24, 2012, Asetek entered into a licensing agreement with Corsair, which allowed Corsair to practice the patents issue in exchange for royalty payments and other consideration. *See* Docket No. 180-11 (McCauley Decl., Ex. 10) (License Agreement). Section

1  2.01 provides in relevant part that "Asetek grants Corsair . . . a non-transferable, non-assignable,
2  nonexclusive license, with no right to sublicense, under the US Patents, to make, *have made*, use
3  import, sell, offer to sell (through distribution or otherwise), or otherwise dispose of Licensed
4  Products in the United States." Docket No. 180-11 (McCauley Decl., Ex. 10) (License Agreement §
5  2.01) (emphasis added).

6  In its motion for partial summary judgment, CoolIT argued, *inter alia*, that, because Asetek
7  gave Corsair "have made" rights, Asetek cannot sue CoolIT for patent infringement (at least during
8  the license period) as all that CoolIT was doing was making the allegedly infringing products for
9  Corsair pursuant to Corsair's request. *See* Docket No. 118-1 (Lyons Reply Decl. ¶ 8) (testifying
10 that, "[p]ursuant to an agreement dated October 6, 2010, CoolIT designed and developed liquid
11 cooling products in accordance with Corsair's unique requirements and custom specifications").
12 Asetek argued in turn that, where a licensee simply purchases a product "off the shelf" (*i.e.*, in
13 ready-made form), the manufacturer of the product cannot be said to "have made" the product for
14 the licensee. In support of this position, Asetek relied in large part on a Delaware district court
15 opinion. *See Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201 (D. Del. 2001); *see also Thorn*
16 *EMI N. Am., Inc. v. Hyundai Elecs. Indus. Co., Ltd.*, No. 94-332-RRM, 1996 U.S. Dist. LEXIS
17 21170, at *2 (D. Del. July 12, 1996) (stating that off the shelf means that the parts were not custom
18 made specifically for the licensee but rather sold in a "ready-made form").

19 In its prior order denying in part and deferring in part the motion for partial summary
20 judgment, the Court stated that it was "skeptical of Asetek's [off-the-shelf] argument." Docket No.
21 135 (Order at 8). It noted, for example, that no Federal Circuit case had held that the licensee must
22 "provide specifications to the third party in addition to its [have made] request. While the product
23 must be produced or made 'for' the licensee, the Federal Circuit has not expressly stated the product
24 must be *custom* made for the licensee." Docket No. 135 (Order at 8).

25 The Court also noted that

26 > it is difficult to discern a policy basis to distinguish under the implied
> license theory a customized product from a standardized product
27 > purchased by the licensee. In either case, the licensee chooses to
> outsource the production in order to practice the patent rather than
28 > manufacture the product itself. And even if the product is off-the-

2

> shelf, immunity extends only to sales of the product to the licensee, not to sales by the manufacturer or by any other unlicensed party. It is therefore difficult to discern how the licensor's expectations and rights are impaired as a result of the licensee buying off-the-shelf versus customized products; the licensor's rights as to sales of infringing off-the-shelf products to unlicensed users is still protected. Furthermore, the line between customized and non-customized products can be unclear: for instance how should the court treat an off-the-shelf product that is slightly modified for the license?

Docket No. 135 (Order at 9).

The Court, however, stated that it was "not required at this juncture to decide whether to adopt *Intel*'s [off-the-shelf] limitation on the 'have made' defense" because CoolIT's CEO stated in a declaration that the products CoolIT sold to Corsair "were pursuant to a specific request and were not off-the-shelf." Docket No. 135 (Order at 9). But because Asetek had not had an opportunity to test the claims made in that declaration, the Court deferred a ruling on this portion of the summary judgment motion so as to permit Asetek to take discovery on the above factual assertion. *See* Docket No. 135 (Order at 9).

Discovery has now been completed. The evidence submitted by Asetek in conjunction with its supplemental opposition reflects as follows.

- "CoolIT approached Corsair to discuss a retail channel partnership for liquid cooling systems." Docket No. 179-1 (McCauley Decl., Ex. 2) (supplemental response to Interrogatory No. 8). CoolIT and Corsair eventually reached an agreement under which CoolIT would make products for Corsair.

- According to Corsair, for "the initial products we just took standard products from CoolIT with – with just our logos put onto the outside cover." Docket No. 180-6 (McCauley Decl., Ex. 3) (Paul Depo. at 266).

- However, subsequently, Corsair appears to have had more of a hand in product specifications. Although all products would use CoolIT's pump/cooling head design (internally called the ECO II), Corsair "would pick combinations of radiators and fans to produce different – different products. [¶] So, for example, all the products that [Corsair would] buy from CoolIT had exactly the same standard CoolIT block pump and, you know, pump head technology. And then we've simply specified the lengths of the tubes, the

radiator thickness and size and the fans." Docket No. 180-6 (McCauley Decl., Ex. 3) (Paul Depo. at 266-67); *see also* Docket No. 179-1 (McCauley Decl., Ex. 2) (response to Interrogatory No. 8) (stating that "Corsair specified the physical size of the products, the type and characteristics of the tubing used to connect the cooling head to the radiator, the design of the labels, such as the inclusion of Corsair's logos, and the specifications, design, and content of the packaging and additional included materials").

- Corsair has at least three relevant products that were made by CoolIT: the H60, the H80i, and H100i. For the H60, approximately 35% of the components in the product are Corsair-specific components; for the H80i and H100i, the percentages are 44% and 46% respectively. Docket No. 179-1 (McCauley Decl., Ex. 2) (response to Interrogatory No. 8).

- According to CoolIT, "the 3/8" rubber tubing and mating barbs and radiators are specific to Corsair and not used in products for any other customer." Docket No. 179-1 (McCauley Decl., Ex. 2) (supplemental response to Interrogatory No. 8).

- According to Asetek, CoolIT's pump head – which is used in all Corsair products – "is the fundamental and most significant feature of CoolIT's liquid cooling system [and] is the building block on which CoolIT's liquid cooling system is based." Docket No. 177 (Tilton Decl. ¶ 3); *see also* Docket No. 178 (Eriksen Decl. ¶ 4). Asetek maintains that "[t]he radiator, the tubing, and the one or more fans . . . are . . . peripheral and commodity components of the liquid cooling system"; furthermore, "[t]he size and configuration of the radiators, fans, and tubing are *highly standardized*, low cost, commodity components. For the most part, these components are defined or selected for compatibility with the common form factors of the PC chassis and the dimension of the fans that are provided with the PC." Docket No. 177 (Tilton Decl. ¶¶ 4-5); *see also* Docket No. 178 (Eriksen Decl. ¶¶ 5-8).

- CoolIT designed its liquid cooling system to be universally compatible. *See* Docket No. 180-5 (McCauley Decl., Ex. 1) (Lyon Depo. at 216) (stating that "we were attempting to have retail competitive products at relatively low cost and have a universally compatible product that would be able to fit into 1U servers"). In other words, the system would be used

not just by Corsair (for the retail channel) but also by others (*e.g.*, in the System Integrator or OEM channels). *See* Docket No. 180-5 (McCauley Decl., Ex. 1) (Lyon Depo. at 231).

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A factual dispute is genuine only if a reasonable trier of fact could find in favor of the nonmoving party.'" *McDonald v. Sun Oil Co.*, 548 F.3d 774, 779 (9th Cir. 2008). All evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

CoolIT has the burden of proving that it effectively had an implied license to practice the patents at issue. *See* Docket No. 135 (Order at 2) (citing *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 828 (Fed. Cir. 1991)).

### B. No Disputed Facts

In its papers, Asetek argues that CoolIT's motion for partial summary judgment must be denied if only because there is a disputed issue of fact. The Court does not agree. As CoolIT points out – and as Asetek conceded at the hearing – the underlying facts on the "have made" rights issue are not in dispute. Asetek argues still that there is a genuine dispute of material fact because a reasonable jury could disagree as to whether, based on those underlying facts, CoolIT's products as sold to Corsair should be considered off the shelf. The Court is not persuaded. As discussed below, the Court remains skeptical about the off-the-shelf theory. Furthermore, even if the Court accepts Asetek's off-the-shelf exception to "have made" rights, no reasonable jury could find that CoolIT's products as sold to Corsair were off the shelf – *i.e.*, in ready-made form instead of being custom made for Corsair.

C.  Off the Shelf

As indicated above, Asetek takes the position that, based on the evidence of record, Corsair simply purchased off-the-shelf products from CoolIT and that "have made" rights do not encompass off-the-shelf purchases.

Asetek's position has several problems. First, as noted above, this Court previously indicated that it was skeptical about the off-the-shelf theory as a legal matter. The Court continues to be skeptical about the theory. Under the off-the-shelf theory, whether a manufacturer's product falls under the protection of a licensee's have made rights depends on whether the product was custom made for the licensee. But this begs the question of how customized a product must be before it can be deemed custom made. For example, what if a product is in ready made form but then is modified to suit the particular needs of a licensee? Is that product thereafter deemed custom made for the licensee or should it still be considered off the shelf? Does the answer to that question depend on the extent of the modification?

Second, even if the Court accepts Asetek's off-the-shelf theory, no reasonable jury could conclude that CoolIT's products as sold to Corsair were in ready-made form and not custom made. The Court acknowledges that, at the beginning of the CoolIT/Corsair relationship (in 2010), it appears that little customization appears to have been done – *i.e.*, CoolIT simply placed Corsair's logo on CoolIT's standard product. But by the time of the Corsair/Asetek license agreement (in 2012), that was no longer the case. Although CoolIT's pump head was used in all products sold to Corsair, Corsair was dictating specifications on other components to be used in the liquid cooling systems (*e.g.*, the radiator, tubing, and fan). This can hardly be characterized as de minimis or inconsequential customization since these other components are elements claimed in the patents in question.

Implicitly recognizing this problem, Asetek argues that the CoolIT products as sold to Corsair should still be deemed off the shelf because the critical part of the product – *i.e.*, the pump head – is in ready-made form and not custom made for Corsair. According to Asetek, (1) the pump head is the "heart of [its] invention," (2) CoolIT thus effectively infringed when it made its own pump head, and (3) under the reasoning in *Intel*, this prior infringement by CoolIT cannot post hoc

6

1. be immunized from liability simply because non-novel, standardized commodities such as a radiator,
2. tubing, and fan are added to the pump head to create a larger product (*i.e.*, a liquid cooling system).
3. *See Intel*, 173 F. Supp. 2d at 233-34 (stating that there must be a "flow of rights [from the licensee]
4. that authorizes the unlicensed party's otherwise infringing acts"; the patentee's "granting of 'have
5. made' rights to licensees does not . . . give the licensee the inherent right to in some way immunize
6. prior acts of infringement [by a third party] through [the licensee's] subsequent purchase of off-the-
7. shelf goods [made by the third party]").
8.     The problem for Asetek is that its patents claim as their invention a liquid cooling system
9. and not a pump head; a pump head on its own does not infringe. Asetek could have claimed a pump
10. head in isolation as an invention but it did not.[1] Moreover, Asetek has not pointed to any authority
11. that endorses an infringement analysis based on the "heart of the invention." Indeed, the authority
12. indicates to the contrary, with case law requiring that an accused product contain each element of a
13. claimed invention. *See TecSec, Inc. v. IBM*, 731 F.3d 1336, 1352 n.2 (Fed. Cir. 2013) (stating that,
14. "[u]nder the 'all elements' rules, the accused device must contain each limitation of the claim, either
15. literally or by an equivalent, to be infringing").
16.     Finally, even if Asetek's "heart of the invention" standard was not problematic for the
17. reasons stated above, there is an independent ground for rejecting it – namely, because it largely
18. seems unworkable. Asetek's "heart of the invention" theory would invite difficult and
19. unascertainable line drawing by the Court in determining which components are core and which are
20. not, a line not part of conventional infringement analysis. It calls upon a court to make assessments
21. without any clear criteria and, even more important, it fails to provide a bright line for others to
22. assess whether their conduct puts them in jeopardy of a patent infringement claim.

23. D.   <u>Laundering Provision</u>
24.     As a final argument, Asetek contends that any have made rights granted to Corsair under the
25. license agreement are effectively tempered by another provision in the agreement, *i.e.*, the so-called
26. "laundering clause" which provides as follows:

---

[1] Notably, in *Intel* itself, it was the allegedly infringing product in its entirety that was off the shelf, and not just a component of the product (as here).

7

> Corsair agrees that neither Corsair nor its Controlled Companies will use the licenses and rights granted by Asetek under this Agreement in any way to circumvent the purpose of this Agreement, or the licensing and enforcement of the US Patents and Non-US Patents against unlicensed entities. Corsair agrees that neither Corsair nor its Controlled Companies will use the licenses and rights granted under this Agreement to launder products of unlicensed entities.

Docket No. 180-11 (McCauley Decl., Ex. 10) (License Agreement § 3.02). While the Federal Circuit has implicitly acknowledged that "have made" rights can be tempered, *see CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1074-75 (Fed. Cir. 2009) (stating that "[a] grant of a right to 'make, use, and sell' a product, without more, inherently includes a right to have a third party make the product" and "[a] clear intent shown in a contract to exclude 'have made' rights can negate what would otherwise be inherent"), there are several problems with Asetek's contention.

First, Asetek never raised the laundering clause in the original round of briefing and therefore waived the argument related to the clause.

Second, on its face, the laundering clause does not appear to be in any tension with the have made rights provision. Rather, the laundering clause seems directed to a situation such as that referenced in *Cyrix Corp. v. Intel Corp.*, 77 F.3d 1381, 1387 (Fed. Cir. 1996) (stating that, in *E.I. Du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108 (Del. 1985), there was a sham transaction when "[t]he third party (Carbide) acting under Shell's 'have made' rights was manufacturing and selling the product to Shell and then buying it back in what was only a set of paper transactions"). At the very least, there is no clear intent shown in the license agreement to limit the have made rights provision in the way suggested by Asetek.

## III. CONCLUSION

Accordingly, the Court concludes that, as to the previously deferred portion of pending motion, partial summary judgment in favor of CoolIT is warranted. Under the license agreement,

///
///
///
///
///

8

1  Corsair was entitled to have liquid cooling systems made for it, and the liquid cooling systems that
2  CoolIT provided to Corsair were not in ready-made form but rather were sufficiently customized so
3  as to be covered by the "have made" provision of the license agreement.
4      This order disposes of Docket No. 93.

6      IT IS SO ORDERED.

8  Dated: June 16, 2014

_____
EDWARD M. CHEN
United States District Judge

9